The taxpayer made an inventory of the buildings, machinery, and equipment on hand at March 1, 1918, and valued the same on the basis of cost of reproduction, less depreciation, at $340,148.77. We can not accept this method of valuation in the absence of proof that the value thus determined was the actual value at March 1, 1918. The evidence submitted, however, shows that the inventory is correct, and it further establishes to the satisfaction of the Board that the actual value of the entire property, including the land and water rights, on March 1, 1918, was $357,000. The Commissioner valued the land and water rights at $25,700, and this the taxpayer accepts. The record does not disclose the value which the Commissioner placed upon the buildings, machinery, and equipment. By allocating $25,700 of the total value of $357,000 to land and water rights, and apportioning the remaining $331,300 to brick and frame buildings, and machinery and equipment, we arrive at the values for the various properties as set forth in the findings of fact, which should be used in computing the deduction for exhaustion, wear and tear.

*Order of redetermination will be entered on 10 days' notice, under Rule 50.*

---

## Appeal of THE NATIONAL BANK OF BALTIMORE.

Docket No. 3844.   Submitted July 9, 1925.   Decided March 30, 1926.

*H. C. Poffenberger, Esq.,* for the taxpayer.
*R. P. Smith, Esq.,* for the Commissioner.

Before STERNHAGEN and LOVE.

The Commissioner determined a deficiency of $949.61 income and profits tax for 1919 by including in gross income an amount of $6,195 received by the petitioner as the last payment on account of the principal of a loan existing in 1911, and an amount of $11,413.18 received in that year as accumulated interest on the original loan.

### FINDINGS OF FACT.

On September 1, 1911, the petitioner had loaned to a partnership the sum of $105,000 on demand negotiable notes secured by negotiable bills of lading and warehouse receipts. Some of the bills of lading and warehouse receipts were forgeries. Some payments were made, or in some other way the account was reduced to a balance outstanding on November 3, 1911, of $71,317.78. On November 3, 1911, a national bank examiner was examining the petitioner's books, and he suggested that the petitioner immediately charge off $70,000 of

the account, which the board of directors thereupon authorized on November 4, 1911. Of this $70,000 charged off, payments amounting to $13,805 were received up to June 30, 1913. Later one of the partners wanted to borrow $10,000 from the petitioner, which the petitioner would only lend with a satisfactory assurance of repayment of the $70,000. One of the partners wrote the petitioner a letter in which he said he reacknowledged the debt and intended to pay it. He gave notes for the amount, signed by him and his brother, and payments were made of $20,000 in 1917, $30,000 in 1918, and $6,195 in 1919. In 1919 interest on the account was received of $11,413.18.

*The deficiency should be computed by excluding $6,195 from petitioner's income for 1919. Judgment accordingly will be settled on 15 days' notice, under Rule 50.*

---

## APPEAL OF ESTATE OF P. E. O'HAIR.

Docket No. 4184.    Submitted September 23, 1925.    Decided March 30, 1926.

*Andrew T. Smith, Esq., Virgil Y. Moore, Esq.,* and *H. L. Mc-Laren, C. P. A.,* for the taxpayer.
*Thomas P. Dudley, Jr., Esq.,* for the Commissioner.

Before MARQUETTE, MORRIS, LOVE, and GREEN.

The Commissioner has asserted a deficiency in income taxes for the year 1920 in the sum of $7,827.53, all of which is involved in this appeal. The petitioner contends that certain income included by the Commissioner in the gross income of P. E. O'Hair, deceased, was in fact income of P. E. O'Hair & Co., a partnership in which the deceased had no interest.

### FINDINGS OF FACT.

P. E. O'Hair, a resident of San Francisco, Calif., died intestate on October 9, 1923. He was survived by his wife, Cora A. O'Hair, and their five children, Donald, Neil, Ethel, Patrice, and Cora J.

For some time prior to the earthquake and fire which destroyed a portion of the City of San Francisco in 1906, the deceased had been conducting a small plumbing supply business. In this he was assisted by his sons, Donald and Neil, who were of the ages of 21 and 18, respectively. The deceased had been in poor health for some time, and just prior to the fire, upon the advice of his physician, he determined to abandon his business and go to Chico, Calif., hoping there to recover his health and strength. The business was turned

104881—27——69